UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARSHALL F. NEWMAN, as he is trustee of the ANGELO C. TODESCA, JR. FAMILY TRUST II,   )<br>   )<br>   )<br>   )<br>Plaintiff and   )<br>Counterclaim Defendant,   )<br>   )<br>v.   )<br>   )<br>UNITED STATES OF AMERICA,   )<br>   )<br>Interested Party and   )<br>Counterclaim Plaintiff,   )<br>   )<br>v.   )<br>   )<br>ALBERT M. TODESCA,   )<br>   )<br>Counterclaim Defendant.   )<br>   )  | Civil Action No.<br>20-10632-FDS |

**MEMORANDUM AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
BY THE UNITED STATES AND MARSHALL F. NEWMAN**

**SAYLOR, C.J.**

This is an action arising out of a tax levy. In 2009, counterclaim defendant Albert Todesca, who was then serving as an officer of several construction companies, pleaded guilty to tax evasion for failing to remit taxes withheld from employee wages to the Internal Revenue Service ("IRS"). As a result, the IRS made an assessment against him for both his income-tax liability and trust-fund recovery penalties.[1]

To recover those taxes and penalties, the IRS placed two levies on accounts of a family

---

[1] The term "trust fund" refers to the fact that amounts withheld from wages are held in trust for the United States.

trust, the Angelo C. Todesca, Jr. Family Trust II (the "Trust"), of which Todesca was a beneficiary, held at Santander Bank, N.A. Once notified by the IRS of the levies, Santander transferred the levied amounts from the trust account to a suspense account. Marshall Newman, as trustee of the Trust, then sued Santander and the United States, alleging that the levies were unlawful.

The Court previously granted summary judgment in favor of the United States on its first counterclaim, to bring to judgment the income-tax liabilities and trust-fund recovery penalties assessed against Todesca. The United States has now moved to enforce its second counterclaim, to enforce the federal tax levies against the Trust. Newman has cross-moved for summary judgment on his claim for wrongful levy.

For the following reasons, the motion for summary judgment by the United States will be granted, and the motion for summary judgment by Newman will be denied.

I.  **Background**

The following facts are undisputed, except where otherwise noted.[2]

    A.  **Factual Background**

        1.  **The Trust**

The Angelo C. Todesca, Jr. Family Trust II was created by the settlor, Angelo C. Todesca, Jr., on August 10, 2011. (Amend. Compl., Ex. A at 17). Angelo Todesca died on February 16, 2017. (Paul Todesca Dep. at 42).

Albert Todesca and Paul Todesca are adult sons of Angelo Todesca. (Amend. Compl.

---

[2] The Court previously reviewed the facts of this case in its Memorandum and Order on Santander N.A.'s Motion for Judgment on the Pleadings and its Memorandum and Order on the United States' Motion for Summary Judgment on its first counterclaim. (Dkt. Nos. 77 and 119). Facts relevant to the current motion are briefly recapitulated here.

¶ 8).

Marshall Newman has served as trustee of the Trust since Angelo Todesca's death in 2017. (Paul Todesca Dep. at 42, 51; Pl.'s Ans. to Interr. No. 2).

Upon the death of the settlor, Article 3 of the Trust directs the trustee to divide the Trust property into two equal shares, designated Subtrust A and Subtrust B. (Trust art. 3). With respect to Subtrust A, Article 3 directs the trustee to distribute:

> so much of the annual net income in such amount or amounts or principal as the said Albert M. Todesca may, from time to time, request, or, in the absence of such request, so much thereof as the Trustee in his sole discretion shall deem necessary for the maintenance, support and general welfare of said, Albert M. Todesca.

(Trust art. 3, sec. A). Upon Albert Todesca's death, the remaining property in Subtrust A is to be distributed to his son. (*Id.*). Paul Todesca has an identical right to request distributions from Subtrust B, with the remainder going to his sons upon his death. (Trust art. 3, sec. B).[3]

Although the settlor died in 2017, Newman has never subdivided the trust into Subtrust A and B. (Pl.'s SOF ¶ 15).

Since at least August 2015, money and property belonging to the Trust was deposited and held in two accounts at Santander Bank in the name of the "Angelo C. Todesca, Jr. Family Trust II": a money market account ending in 6105 and a checking account ending in 8985. (Dkt. No. 121, Ex. 4; Pl.'s Ans. to Interr. No. 4). As of January 6, 2020, the bank accounts had a combined balance of $764,483.12. (Dkt. No. 121, Ex. 5). Other assets of the Trust include real-estate

---

[3] The Trust also contains the following spendthrift provision:

> The interest of each beneficiary under this Trust shall not be transferable or assignable in any manner, whether voluntary or involuntary, nor be liable to attachment or seizure of any claim, debt or liability of or against said beneficiary, nor be assignable to, or in connection with any proceeding in bankruptcy or insolvency, or in any other manner whatsoever.

(Trust art. 11).

3

holdings and debt obligations. (Amend. Compl. ¶ 16).

According to the verified complaint, Albert Todesca has never made a request to the trustee for a distribution, and the trustee has not deemed it necessary to make a distribution for his maintenance, support, or general welfare. (Amend. Compl. ¶ 17).[4]

On October 23, 2009, Albert Todesca pleaded guilty to the crime of tax evasion, arising out of his failure to pay employment taxes on behalf of multiple road-construction companies.

As of January 2022, Albert Todesca had yet to pay in full his assessed income taxes for tax years 2008 through 2010; according to the IRS, his outstanding liabilities totaled $97,737.38. (Bishop Decl. ¶ 9).[5] In addition, Albert Todesca had yet to pay in full the trust-fund recovery penalties assessed by the IRS. Those liabilities totaled $296,011.32 as of January 2022. (*Id.* ¶ 10).

### 2. The Levies

On January 2, 2020, the IRS served a notice of levy to Santander Bank identifying the taxpayer as "Albert Todesca, as Beneficiary of the Angelo C. Todesca, Jr. Family Trust II (Subtrust A)." (Dkt. No. 121, Ex. 6). The levy was in the amount of $322,620.90. (*Id.*). The IRS issued an additional notice on July 16, 2020, in the amount of $56,954.42, representing two quarterly periods for TFRP liabilities not included in the initial levy. (Dkt. No. 121, Ex. 7).

The United States does not dispute that notice of the January 2, 2020 levy was not served

---

[4] The United States responds that there is no evidence cited in support of this statement but acknowledges that a verified complaint may serve as an affidavit on a motion for summary judgment, if based on personal knowledge by someone competent to testify. *Sheinkopf v. Stone*, 927 F.2d 1259, 1262 (1st Cir. 1991).

[5] In calculating Todesca's outstanding tax liabilities and trust-fund recovery penalties, the IRS accounted for "all assessed taxes, additions to tax, interests, payments, credits, offsets, and abatements, as well as accrued additions to tax and interest." (Bishop Decl. ¶¶ 9, 10).

4

on Newman, the trustee. (Def.'s Reply at 3).[6] However, a notice of levy was served upon the "Angelo C. Todesca Jr. Family Trust II c/o Newman and Newman PC" on October 24, 2019, in the amount of $304,754.16. (Dkt. No. 127, Ex. 9). That notice indicated that the levy was being used to collect money owed by Albert Todesca. *Id.*

At the time of the levies, there were no accounts at Santander Bank with a designation of Subtrust A. (Amend. Compl. ¶ 15).

Santander Bank then froze the funds in the Trust account. (Amend. Compl. ¶¶ 24, 45). On October 14, 2020, it deposited the funds with the court. (Dkt. Nos. 43-44).

B.      **Procedural Background**

On March 24, 2020, Newman filed suit against Santander Bank in Massachusetts Superior Court for breach of contract, conversion, and a violation of Mass. Gen. Laws ch. 93A. Santander Bank removed the action to this Court. The United States also filed a notice of removal asserting that it was the real party in interest against which the action was brought; Newman then amended the complaint, adding a wrongful levy claim against the United States. The United States then filed a counterclaim against Albert Todesca to reduce the income-tax liabilities and trust-fund recovery penalties assessed against him to judgment (Count 1), and a counterclaim to enforce the federal tax levies against the Trust (Count 2).

On January 19, 2022, Albert Todesca stipulated to his liability for the assessed income taxes and the trust-fund recovery penalties. (Dkt. No. 104).[7] The court granted the motion of

---

[6] The complaint does allege that Newman received notice from Santander on January 23, 2020, advising him that it had withdrawn the entire amount of the first levy. (Compl. ¶ 24, Ex. C).

[7] Todesca reserved the right to "(1) dispute the calculation of interest, (2) argue that certain penalties were included or calculated in error, (3) argue that payments and other funds were not properly credited against the assessments, and/or (4) make other similar arguments [as] to the computation of the amount of [his] liability." (Dkt. No. 104).

5

Santander Bank for judgment on the pleadings, and the United States dismissed its counterclaim against the bank.

On July 15, 2022, the court granted an unopposed motion for summary judgment by the United States as to its first counterclaim, reducing to judgment the assessed income-tax liabilities in the amount of $97,737.38 and the assessed trust-fund recovery penalties in the amount of $296,011.32, in addition to any statutory additions and interest from January 28, 2022.

The United States has now moved for summary judgment on its claim to enforce the federal tax levy and/or liens against the Trust.

Newman has cross-moved for summary judgment on Count 4 of the second amended complaint, alleging wrongful levy against the IRS for serving two notices of levy on funds held at Santander Bank.

## II. **Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth

specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted). The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

**III.   Analysis**

    **A.   Government's Motion for Summary Judgment on Counterclaim 2**

The United States has moved for summary judgment to enforce the federal tax levies against the Trust. It contends that the federal tax liens attached to the taxpayer's fully vested right to distributions under the Trust, and that the IRS has made valid demands for distribution with which the trustee is obligated to comply. The trustee opposes the motion on the basis that Santander Bank did not possess property belonging to the taxpayer and that the IRS has no right to demand payment from the bank.

        **1.   The Federal Tax Lien Statute**

"Under the relevant provisions of the Internal Revenue Code, to satisfy a tax deficiency, the Government may impose a lien on any 'property' or 'rights to property' belonging to the taxpayer." *Drye v. United States*, 528 U.S. 49, 55 (1999).[8] The lien arises "at the time the assessment is made and shall continue until the liability" is satisfied or becomes unenforceable. 26 U.S.C. § 6322. Here, liens arose as a matter of law in favor of the United States on the dates of the tax assessments and attached to all of Todesca's property and rights to property, including after-acquired property. *See United States v. McDermott*, 507 U.S. 447, 448 (1993) (first citing 26 U.S.C. §§ 6321-22, and then *Glass City Bank v. United States*, 326 U.S. 265, 268 (1945)).

---

[8] "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321.

"A federal tax lien, however, is not self-executing.  Affirmative action by the IRS is required to enforce collection of the unpaid taxes." *United States v. National Bank of Com.*, 472 U.S. 713, 720, (1985).  There are two principal collection tools:  a lien-foreclosure suit under § 7403(a)—not relevant here—and an administrative levy under § 6331.

Section 6331 provides as follows:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

26 U.S.C. § 6331(a).  Where a taxpayer's property is held by a third party, a notice of levy upon the custodian of the property may be served under § 6332(a).  That statute provides as follows:

> [A]ny person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary . . . .

26 U.S.C. § 6332(a).  "This notice gives the IRS the right to all property levied upon, and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government."  *National Bank of Com.*, 472 U.S. at 720 (citations omitted).

### 2. Whether the Taxpayer's Interest in the Trust is a "Right to Property"

The first issue is whether the lien attached to an interest of the taxpayer in the Trust.  *Aquilino v. United States*, 363 U.S. 509, 512 (1960) (describing that issue as the "threshold question . . . in all cases where the Federal Government asserts its tax lien").

"[U]nder the federal tax lien statute, state law determines what interest a taxpayer possesses with respect to property; the federal statute creates no property rights.  But federal law

determines *whether* that state-law-created interest constitutes 'property' or 'rights to property' under the federal lien statute." *United States v. Murray*, 217 F.3d 59, 63 (1st Cir. 2000) (quoting *National Bank of Com.,* 472 U.S. at 722, 727). "The language in §§ 6321 and 6331(a) . . . 'is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have.'" *Drye*, 528 U.S. at 56 (quoting *National Bank of Com.*, 472 U.S. at 719-720).

Relying on the First Circuit's decision in *United States v. Murray*, 217 F.3d 59 (1st Cir. 2000), the United States contends that the taxpayer's right to request distributions under the Trust constitutes a right to property upon which a lien may attach. In *Murray*, a taxpayer was a 50 percent beneficiary of a trust, as well as one of the three trustees. *Id.* at 61. The IRS filed an action to reduce to judgment an assessment against the taxpayer and to foreclose a lien on a house that was part of the trust corpus. *Id.* After the district court entered judgment against the husband, the wife appealed, arguing that because his interest in the trust corpus was subject to termination by vote of the other trustees, his interest was too contingent and uncertain to constitute "property" to which a lien could attach. *Id.* at 61-63.

The First Circuit disagreed. Notwithstanding the fact that, under Massachusetts law, an interest in a trust corpus that is subject to the power of a third party to cut off rights is not yet "vested," *id.* at 64 (citing *Markham v. Fay*, 74 F.3d 1347, 1359 (1st Cir. 1996)), the court stated that federal law determines whether an interest is sufficiently substantial to be treated as property for purposes of the federal tax-lien statute. *Id.* In making that determination, the court noted that "transferability, pecuniary value, control, [and] enjoyment" are "among the relevant considerations in a highly fact-specific inquiry." *Id.* at 63. In *Murray*, the "decisive" factor was the Supreme Court's decision in *United States v. National Bank of Commerce*, 472 U.S. 713

9

(1985), which held that a taxpayer's interest in a joint bank account giving either account holder the right to withdraw funds was property for purposes of the tax-lien statute, at least prior to the co-holder depleting the funds. *Murray*, 217 F.3d at 65 (citing *National Bank of Com.*. 472 U.S. at 724-26). *Cf. United States v. Bess*, 357 U.S. 51, 56 (1958) (insured's right to compel insurer to pay him the cash surrender value of the policy constituted property or rights to property).

Here, the Trust directs the trustee, among other things, to distribute, upon the death of the settlor, "so much of the annual net income in such amount or amounts or principal as the said Albert M. Todesca may, from time to time, request." (Trust art. 3, sec. A). "[I]n the absence of such request," it also grants the trustee the discretionary right to make distributions he deems "necessary for the maintenance, support and general welfare" of the taxpayer. (*Id.*). That language creates a nondiscretionary obligation in the trustee to distribute Trust income and corpus upon request of the taxpayer.

The factors identified in *Murray* strongly support the government's proposition that the taxpayer's right to demand distributions is a right to property under the federal tax-lien statute.

First, it is beyond dispute that the taxpayer's interest in the principal and income of the Trust has pecuniary value.

Second, while the Trust contains a spendthrift provision that otherwise restricts alienation, "[i]n the area of spendthrift trusts, the courts have consistently held that a restraint on transferability, whether arising from the trust instrument or from state law, does not immunize the beneficiary's interest from a federal tax lien." *United States v. Rye*, 550 F.2d 682, 685 (1st Cir. 1977); *see also* RESTATEMENT (SECOND) OF TRUSTS § 157(d) (1959) ("Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary . . . by the United States . . . .").

Third, although under Massachusetts law a trustee has legal title to trust property and significant discretion to manage trust funds, a trustee does not have unfettered control. Instead, as noted in *Murray*, his discretion is constrained by the requirement that he act "for the best interest of the trust estate," and, by extension, the beneficiaries and remaindermen. (Trust art. 6, secs. 1.A, 1.D, 1.F). *See Old Colony Tr. Co. v. Silliman*, 352 Mass. 6 (1967); *Markham*, 74 F.3d at 1361 (stating that "[a] trustee does not hold trust property as her own" but rather to manage trust property for the benefit of the beneficiaries). The fact that the taxpayer here has apparently never made a request for distribution does not undermine the fact that he had the *right* to request one. Nor does the fact that he cannot personally withdraw from the bank account indicate that he lacks any interest in the funds, because Congress intended that the tax lien statute be read broadly "to reach every interest in property that a taxpayer might have." *National Bank of Com.*, 472 U.S. at 719-20; *see also United States v. First Nat. Bank & Tr. Co.*, 695 F. Supp. 194, 196 (W.D. Pa. 1988) (inability to withdraw funds from an account not sufficient to show that taxpayer lacked any interest in the funds).

Nor can the fact that the Trust has not been divided into Subtrusts A and B fairly be said to diminish the trustee's control over the Trust property—particularly in light of the fact that the trustee has failed to do so in direct violation of the terms of the Trust. Indeed, to find otherwise would be to permit the trustee to thwart the lawful collection activities of the IRS by violating his obligations under the Trust agreement, without any consequence to the taxpayer or the trustee himself. It is noteworthy that the required division of assets appears to involve a purely ministerial act by the trustee, involving mere arithmetic, not the exercise of any judgment or discretion. And there is nothing in the record to suggest that the trustee has failed to do so for any valid reason.

Fourth, the terms of the Trust grant the taxpayer the right to enjoy Trust property by requesting a distribution, which the trustee "shall pay over to or for" his benefit. (Trust art. 3). And because the right to amend or revoke the Trust terminated upon the death of the settlor, the taxpayer's right to distribution is not currently subject to divestment or termination, making this a stronger case than either *Murray* or *National Bank of Commerce*. *Murray*, 217 F.3d at 65 (citing *National Bank of Com.*, 472 U.S. at 724-26).[9]

Under the circumstances, the Court concludes that the taxpayer's right to request distributions under the Trust "is sufficiently substantial that it should be treated as 'property' or 'rights to property' for purposes of the federal tax lien statute." *Murray*, 217 F.3d at 64.

### 3.  Whether the IRS Has the Right to Demand Payment

Assuming that the tax lien validly attached to the taxpayer's right in the Trust, the next question is whether the United States had the right to demand payment from Santander.

As noted, "[a] federal tax lien [] is not self-executing," and "[a]ffirmative action by the IRS"—including through an administrative levy—"is required to enforce collection of the unpaid taxes." *National Bank of Com.*, 472 U.S. at 720.[10] "In a levy proceeding, the IRS 'steps into the taxpayer's shoes,'" and "acquires whatever rights the taxpayer himself possesses." *National Bank of Com.*, 472 U.S. at 725 (quoting *United States v. Rodgers*, 461 U.S. 677, 691 n.16 (1983)). Because the taxpayer has a right to make a demand for distribution under the Trust instrument, the IRS assumes the same right.

---

[9] Prior to his death, Angelo Todesca, as settlor, had "the power to revoke [the Trust] in whole or in part, or to alter or amend the terms of [the Trust], and to free any sums of money, securities, or other property from the terms of the Trust created hereby, at any time during Settlor's lifetime . . . ." (Trust art. 10). Under *Murray*, even a right to trust income that is subject to divestment by a third party may constitute a right to property under the tax lien statute. *Murray*, 217 F.3d at 65.

[10] For that reason, the government's argument that the Court may immediately disburse the funds even if the levies were invalid is unavailing. (Gov't Mem. at 12).

The trustee contends that the levies upon Santander were invalid because the taxpayer had no right to request a withdrawal from Santander directly, because there was no account in the name of Subtrust A. Therefore, he argues, the United States cannot stand in the taxpayer's shoes to do the same. *See St. Louis Union Tr. Co. v. United States*, 617 F.2d 1293, 1301 (8th Cir. 1980) ("The IRS acquires by its lien and levy no greater right to property than the taxpayer himself has at the time the tax lien arises."). However, the sole reason that Subtrust A does not exist is the trustee's failure to subdivide the Trust upon the settlor's death, in direct contravention of the explicit terms of the Trust instrument. Allowing the trustee to evade a tax lien by deliberately disregarding the terms of the Trust would frustrate Congress's purpose in creating the remedy of administrative levy, which is to promote "the interest of the Government in the speedy collection of taxes." *National Bank of Com.*, 472 U.S. at 729.

In addition, under the tax lien statute, the administrative levy is a "provisional remedy, which does not determine the rights of third parties until after the levy is made, in postseizure administrative or judicial hearings." *National Bank of Com.*, 472 U.S. at 721. Therefore, a third party asserting rights to the levied-upon property must do so through a wrongful levy suit—as the trustee has done here—rather than by attempting to frustrate the disbursement of the property to the government.

Furthermore, and in any event, courts have held that the right to receive income from a trust can be levied upon, even where that right has not yet fully matured. *See St. Louis Union Tr. Co.*, 617 F.2d at 1302 ("The unqualified contractual right to receive property is itself a property right subject to seizure by levy, even though the right to payment of the installments has not matured at the time of the levy."); *Mercantile Tr. Co. v. Hofferbert*, 58 F. Supp. 701, 706 (D. Md. 1944) (income payable to a beneficiary of a spendthrift trust was subject to levy while the

13

income was still in the possession of the trustee).  *Cf. United States v. Ruff*, 99 F.3d 1559, 1564 (11th Cir. 1996) (commission owed to broker was a "fixed and determinable" property right subject to levy, even if right to receive payment had not yet arisen).

In short, the IRS has the right to demand payment from Santander Bank as to the taxpayer's interest in the Trust.

### 4. Whether Proper Notice Has Been Given to the Trustee

The trustee further contends the United States has not made a valid demand for distribution because the notices of levy were not validly served upon him.  It is true that the January 2, 2020 levy to Santander was not served upon the trustee.  However, it appears that he was served in October 2019 with a notice that alerted him to the fact that the IRS was seeking to collect taxes from the Trust, which the United States contends "constituted a legal request to the Trustee for a distribution by the IRS standing in the shoes of the taxpayer." (Dkt. No. 127, Ex. 9; Gov't Reply at 3).  According to the government, it was only after the trustee failed to comply with this initial levy that the IRS served Santander.  Furthermore, "[l]evy may be made by serving a notice of levy on *any* person in possession of, or obligated with respect to, property or rights to property subject to levy." 26 C.F.R. § 301.6331-1(a)(1) (emphasis added).  And Santander certainly qualifies as a "person in possession" of property subject to levy.  *See id.* (bank accounts included among property subject to levy).

Accordingly, the Court concludes that the levy was not invalid for lack of notice to the trustee.

### 5. Conclusion

As the foregoing discussion indicates, if there is any question at all as to the ability of the United States to access the funds—and the Court has concluded that there is not—it arises entirely from the failure of the trustee to divide the Trust property in violation of his duty under

the Trust agreement. This Court is invested with equitable powers that, presumably, include the power to issue injunctive relief requiring the trustee to take that action if necessary to prevent further impairment of the government's ability to collect taxes and penalties. While the Court believes that taking such a step is not required under the circumstances, it is certainly prepared to do so should that prove necessary.

Accordingly, the Court will enter summary judgment for the United States on Count 2.

**B.    Plaintiff's Motion for Summary Judgment on Count 4**

The trustee has cross-moved for summary judgment as to Count 4, his claim for wrongful levy, on the ground that the accounts levied upon were Trust property.

Congress enacted § 7426 to protect against situations where the government levies on property which belongs, at least in part, to a third party. *National Bank of Com.*, 472 U.S. at 731 n.14 (quoting S. Rep. No. 1708, at 29-30, 89th Cong., 2d Sess., 29 (1966)). That provision states:

> If a levy has been made on property . . . , any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.

26 U.S.C. § 7426(a)(1). The action must be brought prior to "the expiration of 9 months from the date of the levy." 26 U.S.C. § 6532(c)(1). "A wrongful levy action pursuant to § 7426(a)(1) is the exclusive remedy available to third parties who assert an interest in the levied property." *Hannon v. City of Newton*, 2012 WL 4390527, at *9 (D. Mass. Sept. 24, 2012).

Although no First Circuit precedent establishes the burden of proof in a wrongful levy suit, other circuits have adopted the following approach: "(1) the plaintiff must show that the IRS filed a levy against property in which the plaintiff has some interest; (2) the burden then shifts to the United States to prove a nexus between the property and the taxpayer; and (3) the

15

burden then shifts back to the plaintiff, who must show that the levy was wrongful, e.g., that the levied property did not belong to the taxpayer." *Biogenesis Church, Inc. v. United States*, 2017 WL 5297903, at *2 (D. Mass. Nov. 13, 2017) (collecting cases).

Plaintiff contends that he has an interest in the accounts as trustee, and that the levied property did not belong to the taxpayer because the Trust has not been subdivided. As stated above, the trustee's interest in the accounts is limited to managing the funds pursuant to the terms of the Trust. There is undoubtedly some nexus between the Trust property and the taxpayer, given his status as beneficiary and right to disbursement of Trust corpus and income. And finally, plaintiff cannot satisfy its burden of showing that the levied property did not belong to the taxpayer, as he is a 50% beneficiary of the Trust and the amount levied upon and deposited with the court is less than 50% of the total Trust corpus.[11]

Accordingly, the Court will deny summary judgment in favor of the trustee as to Count 4.

## IV.   Conclusion

For the foregoing reasons, the motion of the United States for summary judgment as to Count 2 of its counterclaim is GRANTED, and the motion of plaintiff for summary judgment as to Count 4 of the second amended complaint is DENIED.

**So Ordered.**

Dated: August 9, 2023

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

---

[11] The amount reduced to judgment in the July 15, 2022 memorandum and order on partial summary judgment totaled $393,748.70. That amount is more than 50% of the account balance as of January 6, 2020, which was $764,483.12. However, the United States only seeks disbursement of the amount levied upon and deposited with the court, which is $379,575.32, and therefore less than 50% of the account balance. This memorandum and order does not address the remainder of the amount reduced to judgment, or the disposition of the remaining balance.